299 F.Supp.2d 176 (2003)
John LA CAVA, Plaintiff,
v.
NEW YORK STATE COMMISSION ON JUDICIAL CONDUCT, Gerald Stern, Individually and as Administrator of the State Commission on Judicial Conduct, and Henry Berger, Individually and as Chairperson of the New York State Commission on Judicial Conduct, Defendants.
No. 03 CIV.2040(CM).
United States District Court, S.D. New York.
December 11, 2003.
*177 James M. Rose, Esq., White Plains, NY, for Plaintiff.
Elizabeth A. Forman, Attorney General, New York, NY, for Defendants.

MEMORANDUM DECISION AND ORDER DISMISSING COMPLAINT
MCMAHON, District Judge.
In 1998, Plaintiff John La Cava ran for a seat on the New York State Supreme *178 Court, Ninth Judicial District. During the campaign, then-Judge La Cava[1] sent a letter to the delegates of the Right to Life Party, one of the minor parties whose endorsement can be critical in a close election, describing himself as a "pro-life" candidate. Although Judge La Cava did not publicize the letter, a reporter learned of its existence and made the matter public in an article that included additional statements allegedly made by Judge La Cava on the abortion issue. La Cava won the election.
On January 13, 2000, now-Justice La Cava was charged by the defendant New York State Commission on Judicial Conduct with violating the New York State Rules of Judicial Conduct, 22 NYCRR §§ 100.1, 100.2 and 100.5(A)(4)(d)(i)-(ii), inter alia. The Commission charged La Cava with failing to refrain from making statements that committed or appeared to commit him with respect to cases, controversies or issues likely to come before the court. By stipulation, in May 1999, the Commission and La Cava agreed to the facts of the matter, and La Cava expressly agreed to be admonished by the Commission. As part of the stipulation he specifically and expressly waived "oral argument and ... further submissions to the Commission as to the issues of misconduct and sanction." The Commission adopted the terms of the stipulation as its resolution of the matter and admonished La Cava on November 9, 1999. La Cava did not seek rehearing by the Commission at that time (and, indeed, was barred by his own voluntary agreement from so doing). He also did not request review of the determination by the New York Court of Appeals, though he could have done so as of right.
On June 27, 2002, the United States Supreme Court decided the case of Republican Party of Minnesota v. White, 536 U.S. 765, 122 S.Ct. 2528, 153 L.Ed.2d 694 (2002), in which the Court held that persons (including sitting judges) running for judicial office could not be barred from making the public aware of their positions on controversial political questions without violating their First Amendment rights. On October 23, 2002  almost four months after the White decision and almost three years after his case was closed  plaintiff moved for reconsideration of the Commission's determination, arguing that, if the White standard had been applied to his case, he would not have been disciplined. He also argued that the Rules of Judicial Conduct had been applied inconsistently. The application to reopen was denied on December 16, 2002.
The instant complaint was filed in March 2003. It alleges that the Commission's refusal to reopen his case and annul his admonition on the basis of White violated La Cava's First and Fourteenth Amendment rights. Plaintiff seeks an order vacating and annulling his admonition and expunging his record.
Defendant moves to dismiss the complaint on a variety of grounds, the principal one of which is that any action by this Court would violate the Rooker-Feldman doctrine. Rooker v. Fidelity Trust Co., 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923), District of Columbia Court of Appeals v. Feldman, 460 U.S. 462, 476, 103 S.Ct. 1303, 75 L.Ed.2d 206 (1983). Under that rule, federal district courts lack jurisdiction to review claims that would involve direct review of state court decisions and also claims that are "inextricably intertwined" with a state court decision, or cases that seek relief that, if granted, would modify a state court decision.
*179 La Cava's complaint must be dismissed.
First, La Cava is in error when he argues that Rooker-Feldman does not control here. The ruling he seeks from this Court is not an adjudication that the defendants' refusal to reopen his case violates the Constitution (although such a ruling might well be so inextricably intertwined with the original decision as to implicate Rooker-Feldman, see Moccio v. New York State Office of Court Administration, 95 F.3d 195 (2d Cir.1996)). The true measure of the claim is best revealed by the relief sought. La Cava asks this court to issue an order declaring that the original admonition by the Commission  which became final only after La Cava declined to appeal the decision to the New York Court of Appeals  violated his First and Fourteenth Amendment rights.[2] He wishes me to cleanse the blot on his escutcheon. But to do that, I would have to modify  indeed, overturn  the decision of a body that is an arm of the Unified Court System of the State of New York, operating as part of a single, unitary, adjudicatory process for disciplining judges. Rooker-Feldman bars me from doing any such thing.
While the matter has not been adjudicated in this Circuit, the Third, Fourth and Fifth Circuits have all held that Rooker-Feldman bars federal district courts from overturning the decision of state judicial disciplinary bodies that, like defendant Commission, hold hearings, take evidence and issue judicial disciplinary decisions that are then appealable as of right to the highest court of a state. Thomas v. Kadish, 748 F.2d 276 (5th Cir.1984); Hunter v. Supreme Court of New Jersey, 951 F.Supp. 1161 (D.N.J.1996), aff'd 118 F.3d 1575 (3d Cir.1997); Allstate v. West Virginia State Bar, 233 F.3d 813 (4th Cir.2000). In view of the Second Circuit's recent decision in Spargo v. New York State Commission on Judicial Conduct, 351 F.3d 65 (2d Cir.2003), infra, I am confident our own Court of Appeals would reach the same result.
Second, La Cava operates under the mistaken premise that the Commission was required to grant his request to reopen because White has something to do with his case. It does not, because any retroactive effect of the White decision does not extend to La Cava.
When the United States Supreme Court announces a new rule of constitutional law  as it did in White  the rule must be given retroactive effect, but only in open cases, including those open on direct review as well as those still in the process of adjudication. Harper v. Virginia Department of Taxation, 509 U.S. 86, 96, 113 S.Ct. 2510, 125 L.Ed.2d 74 (1993). The "general rule of retrospective effect for the constitutional decisions of" the Supreme Court, Robinson v. Neil, 409 U.S. 505, 507, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973) does not apply to closed cases, or license a former litigant, whose matter is no longer in suit, to relitigate his stale claims under the newly-announced legal principle. Here, La Cava's case was over and done with in November 1999  two and one half years before White was decided. The decision thus affords him no benefit.
La Cava had an absolute right to litigate his case before the Commission and to appeal any adverse ruling to the New York Court of Appeals, which in turn was absolutely obligated to entertain his appeal, see Spargo, 351 F.3d 65, 72-74 (2d Cir.2003). Of course it is true, as La Cava *180 asserts, that neither the defendants nor the New York Court of Appeals could have considered the impact of White on La Cava's conduct back in 1999. But that begs the question. He could have raised, before the Commission and before New York's highest court, the very constitutional argument that White raised  and won in the United States Supreme Court  several years later.[3] Instead, he chose to compromise the matter quickly, for an agreed penalty, and did not press his constitutional claim. White's subsequent success on the issue La Cava abandoned does not entitle La Cava to the proverbial "second bite at the apple."[4]
The parties have not had an opportunity to brief this Court on the impact (if any) of the Second Circuit's recent decision in Spargo v. New York State Commission on Judicial Conduct, supra. However, the Second Circuit's determination not to interfere in the proceedings of the defendant Commission only reinforces my belief that this Court has no business involving itself in this long-closed state disciplinary matter.
The complaint is dismissed with prejudice, and with costs to the defendants.
The Clerk of the Court is directed to close the file.
This constitutes the decision and order of the Court.
NOTES
[1] La Cava was a Judge of the Westchester County Court when he was nominated by the Republican Party to run for the Supreme Court seat.
[2] Interestingly, as the State notes, La Cava's claim sounds in equal protection; he does not suggest that he was denied due process, which might make more sense, given that the alleged predicate for his case is an order denying him a further hearing.
[3] For that reason, La Cava's reliance on In re Shaw, 96 N.Y.2d 7, 12, 724 N.Y.S.2d 672, 747 N.E.2d 1272 (2001) is misplaced. The White decision is not "newly discovered evidence." If La Cava had stood his ground and pressed his own constitutional claim back in 1999, the principle of which he now seeks to take advantage might be known as the La Cava rule instead of the White rule. The point is that La Cava did not choose to fight this battle. He abandoned his claim that the Commission's rule, as applied to his communications about his view on abortion, was unconstitutional. He, like so many of the litigants who appear before him, made a strategic decision; he must abide the consequences.
[4] La Cava's suggestion that I must presume, on a motion made pursuant to Rule 12(b)(6), that he could not have raised his constitutional claim in the 1999 proceeding against him is absurd. I need only accept the well pleaded facts of a complaint as true on a pre-answer motion to dismiss. The law of the State of New York  specifically Article VI, § 22(a) of the New York State Constitution and § 44(1) of New York's Judiciary Law  gives La Cava the right to raise any defense (including a constitutional one) before the Commission, and to press that defense in the Court of Appeals. Constitutional claims are routinely raised in disciplinary proceedings. See e.g., In re Sims, 61 N.Y.2d 349, 474 N.Y.S.2d 270, 462 N.E.2d 370 (1984), in which the Court of Appeals considered and rejected a judge's argument that the appearance of impropriety rule was unconstitutionally vague; and In re Raab, 100 N.Y.2d 305, 763 N.Y.S.2d 213, 793 N.E.2d 1287 (2003), and In re Watson, 100 N.Y.2d 290, 763 N.Y.S.2d 219, 794 N.E.2d 1 (2003)  both cases in which the Court of Appeals recently considered and upheld Commission determinations challenging the constitutionality of the Disciplinary Rules.